### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | BANKRUPTCY PROCEEDING |
| DK AGGREGATES, LLC | CASE NO. 10-51823 KMS |

### OBJECTION TO DISCLOSURE STATEMENT

COMES NOW Hancock Bank, by and through its counsel, and files this its Objection to Disclosure Statement filed by the Debtor (Docket No. 149), and in support thereof would show unto the Court the following:

1.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334, 28 U.S.C. §157 and 11 U.S.C. §1125. This matter is a core proceeding.

2.

On August 9, 2010, DK Aggregates, LLC ("Debtor") filed its petition under Chapter 11 of the United States Bankruptcy Code before the United States Bankruptcy Court for the Southern District of Mississippi. The Debtor has continued its operations as Debtor-In-Possession.

3.

On November 16, 2010, the Court entered an Agreed Order Resolving Hancock Bank's Motion to Prohibit or Condition Use of Cash Collateral and to Provide Adequate Protection (Docket No. 75) and Final Judgment (Docket No. 76). It has been confirmed by the terms of the Order that–

> As a result of the Loan Documents, Hancock Bank is owed $1,371,275.84 as of September 28, 2010. The indebtedness continues to increase through interest, costs, expenses and attorney's fees. The indebtedness is secured by, among other things, a first priority lien position on 1,007 acres in Hancock County, Mississippi commonly known as 9001 Highway 607 West, Pearlington, Mississippi. The Debtor uses the collateral of Hancock Bank as a sand and gravel pit. Hancock Bank has a second lien position on the Debtor's inventory, accounts receivable, and the sand and gravel to the extent the sand and gravel becomes personal property.

        The Debtor has continued its operations as mining sand and gravel. The sand and gravel which is currently unmined remains part of the real property and is the collateral of Hancock Bank. As the Debtor mines the sand and gravel, the collateral of Hancock Bank is being removed and sold which converts the sand and gravel to personal property as inventory and accounts receivable.

(Paragraphs 4 and 5 of Order)

Also pursuant to the terms of the Order, Hancock Bank, the Debtor and the Committee agreed to and the Court approved the following provisions:

        3)    If the Debtor remains in compliance with the terms of this Order, Hancock Bank hereby consents to the Debtor's use of all cash that constitutes "cash collateral" of Hancock Bank under §363(a) of the Bankruptcy Code provided that the funds are used by the Debtor in its operations as Debtor-in-Possession.

        4)    Hancock Bank, the Debtor and the Committee understand that the payments under this Order are on an interim basis and is not an agreement by Hancock Bank to commit or agree to terms and provisions of a plan of reorganization. Hancock Bank reserves its rights to have its motion reconsidered or to file additional motions or pleadings it deems necessary to protect its interest.

(Page 4 of Order)

4.

The Debtor's Disclosure Statement provides in part as follows:

        On December 3, 2010, the Bankruptcy Court entered its Order approving the Debtor's Motion to Employ Equity Partners, Inc. (EPI) to market the Debtor's business for a potential Section 363 sale or joint venture.

        Equity Partners, Inc, (EPI) undertook an extremely broad and thorough marketing process on behalf of DK Aggregates, LLC. This process consisted of direct mail/email program, outreach call program, print and internet advertising, and public relations. EPI drafted a direct mail piece and identified the most likely prospects to consider an investment in or acquisition of DK Aggregates based on their Standard Industrial Classification ("SIC") Code and sales volume, or because EPI knew they would have an interest in this type of business. EPI selected 1,699 companies as targets for a mail/email campaign, and 235 companies as targets for our outreach call program. EPI ultimately spoke to 361 groups regarding this opportunity. Print ads were drafted and placed in the *Wall Street Journal* and *Aggregate Manager Magazine*. Internet advertising was placed on *Aggregate Manager Online, propertyline.com, loopnet.com, bizbuysell.com, bizquest.com, Costar, BrokerWorks.com, Dow Jones' MarketWatch, The Wall Street Journal's*

*Startup.wsj.com*, and EPI's website. EPI also drafted a press release that was sent to industry, financial and local publications.

This extensive marketing effort resulted in **73 groups executing confidentiality agreements** and receiving a hard copy of an **information book**, or access to a **virtual data room**, containing information regarding the DK Aggregates opportunity. **Site visits were conducted with 19 groups** at the DK Aggregates facility, with several groups visiting the facility on multiple occasions, employing consultants in the aggregate business to help determine the value of the property and equipment. EPI received four separate offers for stalking horse consideration, none of which were acceptable to DK management, primarily because the offers were insufficient to generate a meaningful dividend for the unsecured creditors.

(Disclosure Statement, Section V, Part A, Page 10)

The Debtor believes that (i) because holders of Allowed Claims will receive a 100% recovery under the Plan, creditors will receive a greater recovery from the estate of the Debtor than the recovery that they would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code...

(Disclosure Statement, Section V, Part A, Page 12)

If no plan can be confirmed, the Debtor's chapter 11 case may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. Since holders of Allowed Claims will be paid in full, no liquidation analysis is necessary with respect to claims.

(Disclosure Statement, Section XI, Part A, Page 35)

5.

The Debtor's Disclosure Statement fails to provide a liquidation analysis including any basis for a valuation. No information is provided regarding any actual purchase offers obtained by Equity Partners. There is no analysis for the value of the sand and gravel which is the collateral of Hancock Bank being depleted daily.

6.

Hancock Bank disagrees with the Debtor's conclusion that it does not need to provide a liquidation analysis. A review of the Debtor's Plan reveals that the Debtor proposes to deplete Hancock Bank's collateral of sand and gravel in the amount of approximately $13,500,000 over the

next five year period. During that same five year period, the Debtor proposes to pay Hancock Bank $685,352 (which is less than half the debt) and at the same time pay the unsecured creditors $1,575,000. Hancock Bank must know what liquidation value the Debtor asserts for the bank's collateral and the basis for that valuation. Obviously, Equity Partners has been unable to obtain a sufficient offer to pay unsecured creditors. If the liquidation value is insufficient to pay creditors now, then the liquidation value after being depleted for five years will not be sufficient to secure Hancock Bank's claim. Hancock Bank's collateral cannot be replaced.

7.

The Debtor's Disclosure Statement fails to provide adequate information as required by 11 U.S.C. §1125.

8.

Hancock Bank requests the Court to require the Debtor to provide a liquidation analysis with the support for the analysis. Also, the Court is requested to require Equity Partners to report the status of offers (under seal, if necessary).

WHEREFORE, Hancock Bank requests the Court to find that its Objection is well taken and should be sustained.

                                                   Respectfully submitted,

                          By:   s/ Derek A. Henderson
                                Derek A. Henderson
                                Attorney for Hancock Bank

**Derek A. Henderson, MSB #2260**
**111 East Capitol Street, Suite 455**
**Jackson, MS 39201**
**(601) 948-3167**
**d_henderson@bellsouth.net**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that I have this date served, via United States Mail, a true and correct copy of the above and foregoing **Hancock Bank's Objection to Disclosure Statement** to the following:

Robert A. Byrd
Byrd & Wiser
PO Box 1939
Biloxi, MS 39533

David A. Wheeler
Wheeler & Wheeler
PO Box 264
Biloxi, MS 39533

Douglas Draper
Greta Brouphy
650 Poydras St, Ste 2500
New Orleans, LA 70130

Office of the U.S. Trustee
501 E. Court St, Ste 6-430
Jackson, MS 39201

This the 1st day of July, 2011.

By:   s/ Derek A. Henderson
      Derek A. Henderson